**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**MARIANO J. BARVIÉ**                                                                    **APPELLANT**

**V.**                                                    **CIVIL ACTION NO. 1:14-CV-453-KS-RHW**

**STEPHEN F. BROADUS**                                                                   **APPELLEE**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on appeal from the Memorandum Opinion and Order entered by the United States Bankruptcy Court of the Southern District of Mississippi ("Bankruptcy Court") on August 26, 2014.  For the reasons stated below, the Court affirms in part and reverses in part the decision of the Bankruptcy Court.  The case is therefore remanded back to the Bankruptcy Court for further proceedings consistent with this opinion.

**I.  BACKGROUND**

On December 10, 2012, Stephen F. Broadus ("Broadus") filed for relief under Chapter 7 of the Bankruptcy Code.  Mariano J. Barvié ("Barvié") filed a complaint with the Bankruptcy Court objecting to the dischargeability of Broadus' debt to him.

In June 2006, Broadus executed a promissory note with Barvié for a loan of $325,000.00, to be repaid in full and with interest by January 30, 2007.  Broadus used this money to purchase a leasehold interest in a gas station in Gulfport, Mississippi, and pledged his interest in the gas station, along with its inventory and goodwill, to secure the loan.  When Broadus could not pay the full loan back by January 30, 2007, Barvié extended the maturity date of the promissory note.

In August 2010, the parties executed an additional promissory note ("2010 Promissory Note") and security agreement, with the loan amount of this note being the outstanding $297,628.64 from the previous note, with the security agreement mirroring the previous

agreement executed in 2006, with three additional properties in Gulfport, Mississippi, being pledged as further security.  Broadus was to pay $2,656.05 a month under this note with a balloon payment due on October 1, 2010.  Broadus failed to make the payment on October 1, but continued making monthly payments through July 2011 and made an additional payment of $2,000.00 in December 2011 before payments ceased altogether.

Without telling Barvié, Broadus assigned his leasehold interest in the gas station, along with its inventory, and its goodwill, to Ali Hamid ("Hamid") on May 11, 2011.  Hamid paid a total of $115,533.00 for Broadus' interest.  Of this amount, $7,074.60 was paid to Mississippi Commercial Properties on Broadus' behalf for back rent, $40,533.40 was paid on his behalf to Hallmark Petroleum for gas inventory, and the remaining $67,925.00 was paid directly to Broadus.

Following at trial on the merits, the Bankruptcy Court held that the concealment of this sale, and the subsequent denial of any right to the proceeds, from Barvié was a "willful and malicious injury" under § 523(a)(6).  As such, the court determined that Broadus' debt to Barvié was non-dischargeable, but limited the non-dischargeable amount to $74,727.38, which represented the purchase price paid by Hamid minus the cost of the gas inventory.  Barvié now brings this appeal as to this decision.

## II.  STANDARD OF REVIEW

The Court reviews the Bankruptcy Court's conclusions of law *de novo*, while it reviews findings of fact for clear error.  *In re Lothian Oil Inc.*, 650 F.3d 539, 542 (5th Cir. 2011).  The Court reviews mixed questions of law and fact *de novo*. *In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d 553, 557 (5th Cir. 2010).  When the findings by the Bankruptcy Court provide "no basis for meaningful review," the appropriate action is for the case to be remanded for

further determination. *Matter of Missionary Baptist Found. of Am., Inc.*, 796 F.2d 752, 761 (5th Cir. 1986).

### III. DISCUSSION

Barvié argues two issues on appeal. First, he argues that the Bankruptcy Court erred in not holding the entire sum of Broadus' debt to him under the 2010 Promissory Note non-dischargeable under § 523(a)(6) of the Bankruptcy Code. Second, Barvié argues that, if the entire debt under the 2010 Promissory Note is not non-dischargeable, he should be entitled to the entire proceeds from the sale of Broadus' leasehold interest in the gas station, its inventory, and its goodwill. The Court finds Barvié's first argument to be without merit and affirms the decision of the Bankruptcy Court. However, with regards to the proceeds from the gas station sale, the Court finds Barvié's argument to be well taken. As such, the Court reverses the decision of the Bankruptcy Court as to this issue and remands the case back for further proceedings.

    A.    **Non-dischargeable Debt under § 523(a)(6)**

Neither Barvié nor Broadus dispute that Broadus' sale of his leasehold interest in the gas station, along with its inventory, and its goodwill, was a "willful and malicious injury" to Barvié under § 523(a)(6). The only dispute is to the amount of the debt that is excepted from discharge under this section of the Code.

Discharge of debt under Chapter 7 of the Bankruptcy Code does not discharge "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Because § 523(a)(6) is based on tort principles instead of contract, the correct measure of non-dischargeability under this section is the amount caused by the injury rather than the sum owed to the debtor under contract. *In re Modicue*, 926 F.2d

452, 453 (5th Cir. 1991).  The injury to Barvié is "the loss of the collateral securing [Broadus'] indebtedness to which [Barvié] would have had priority upon liquidation of the bankruptcy estate."  *Id.*  The Fifth Circuit in *Modicue* concluded that the proper measure of non-dischargeable injury is the fair market value of the property at the time it was sold.  *Id.*  As there has been no argument made that the gas station was sold for less than fair market value, the Bankruptcy Court was correct in holding that Barvié's recovery is limited to the amount Broadus received from the sale.

        B.       **Proceeds from Gas Station Sale**

A creditor, under § 523(a)(6), is entitled to an amount equal to the injury he sustained.  *Modicue*, 926 F.2d at 453.  The injury Barvié sustained is the amount of the sale proceeds to which he would have had priority absent Broadus' fraudulent concealment.  *See id.*  Under the 2010 Promissory Note, Barvié had a security interest in the leasehold, the inventory, and the goodwill of the gas station.  Broadus sold his interest in this collateral for $115,533.00.  Of that amount, $67,925.00 went directly to Broadus, $7,074.60 was paid to Mississippi Commercial Properties for rent owed, and $40,533.40 was paid to Hallmark Petroleum for the debt Broadus owed for the purchase of his gas inventory.  Without any clear reasoning, the Bankruptcy Court held that only $74,727.38 of the purchase price was non-dischargeable, which represented the $115,533.00 minus the valuation of the gas inventory, which the closing statement of the sale listed as $40,805.62.  The Court is left to assume that the Bankruptcy Court held that the gas vendor's interest in the gas inventory had priority over Barvié's interest in the inventory of the gas station.

Broadus cites *Trenton Lumber Co. v. Boling* to support the Bankruptcy Court's ruling, a Mississippi Supreme Court case from 1957.  *Trenton Lumber*, though, points to § 337 of the

4

Mississippi Code of 1942, a section which dealt with purchase money liens, to support its holding that a vendor lien has priority over a security interest in after-acquired property. 230 Miss. 233, 241 (Miss. 1957). However, this section has since been amended and recompiled and no longer represents the law under which Barvié's security interest should be analyzed. *See* Miss. Code. Ann. § 75-10-102(1)(h).

The relevant section of the amended Mississippi Code states that a purchase money security interest in inventory, unlike other goods, is not automatically perfected upon possession by the debtor. Miss. Code. Ann. § 75-9-324. Thus, for the Bankruptcy Court to have given the gas vendor's interest priority over Barvié's unperfected security interest, it would have had to find that Hallmark Petroleum perfected its interest in the gas inventory. If both Barvié and the Hallmark Petroleum's interests were unperfected at the time of the sale, the first security interest to attach would have had priority, meaning Barvié would have had priority over the entire purchase price of the gas station, its inventory, and its goodwill. Miss. Code. Ann. § 75-9-322(a)(3). Properly applying the law in this case, then, would turn upon a factual determination of the status of Hallmark Petroleum's interest in Broadus' gas inventory. Since this factual determination was not made by the Bankruptcy Court, the appropriate action for the Court to take is to reverse the Bankruptcy Court's decision as to this issue and remand the case back for further proceedings consistent with this opinion. *See Matter of Missionary Baptist Found. of Am., Inc.*, 796 F.2d 752, 761 (5th Cir. 1986).

## IV. CONCLUSION

For the reasons stated above, the Court **affirms** the Bankruptcy Court's holding that the non-dischargeability of Broadus' debt to Barvié is limited to the proceeds from the sale of the collateral securing the debt.

Furthermore, the Court **reverses** the Bankruptcy Court's holding that the Barvié is entitled only to the purchase price of the collateral minus the cost of the gas inventory and **remands** the case back to the Bankruptcy Court for further proceedings consistent with this opinion.

SO ORDERED AND ADJUDGED this the 23rd day of September, 2015.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE